**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| In Re: ) | |
| ) | |
| **AREDIA® AND ZOMETA® PRODUCTS** ) | |
| **LIABILITY LITIGATION** ) | |
| ) | **No. 3:06-MD-1760** |
| **(MDL No. 1760)** ) | **Judge Campbell/Brown** |
| ) | |
| **This Document Relates to:** ) | |
| *Czernowski*, 3:06-00519 ) | |

**To: The Honorable Todd J. Campbell, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that plaintiff's motion for provisional substitution (DE 6431; Related Case 47) be **DENIED**, that the motion to dismiss filed by the Novartis Pharmaceuticals Corporation (NPC) (DE 6498; Related Case 51) be **GRANTED**,[1] that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot.

### I. INTRODUCTION AND BACKGROUND

The original plaintiff in this action, Yvonne Czernowski ("Ms. Czernowski") died on January 4, 2012 in Lake Worth, Florida. (DE 6281, 6431; Related Case 40, 47) NPC filed a suggestion of death on December 6, 2012. (DE 6281; Related Case 40)

Mr. Daniel Osborn ("Mr. Osborn"), counsel for the late Ms. Czernowski, timely filed a motion to provisionally substitute Jean P. Czernowski ("Mr. Czernowski"), the late Ms. Czernowski's husband, as plaintiff in this action. (DE 6431; Related Case 47) Mr. Osborn

---

[1] This Report and Recommendation (R&R) addresses both motions in an effort to resolve these matters more quickly than would be the case were the Magistrate Judge to rule on the motion to substitute, then enter an R&R after the appropriate time to respond/reply to the order ruling on the motion to substitute had passed.

represented in his motion that "Mr. Czernowski [wi]ll provide the Court with a copy of the Order(s) or other legal authority giving him the power to act on behalf" of his late wife "[a]s soon as practicable after it is available." (DE 6431, ¶ 5, p. 1; Related Case 47)

NPC opposed the motion for provisional substitution, and moved to dismiss for failure to comply with Rule 25(a)(1), Fed. R. Civ. P. and the Case Management Order (CMO). (DE 6498; Related Case 51) NPC argued as follows in support of its opposition and motion to dismiss: 1) the motion for provisional substitution should be dismissed for failure to comply with the CMO; 2) Mr. Czernowski has no legal authority to be substituted as his late wife's personal representative; 3) Mr. Osborn has misrepresented that steps were being taken to secure Mr. Czernowski's appointment as his late wife's personal representative; 4) the case should be dismissed for failure to substitute a proper plaintiff as required under the CMO and Rule 25(a)(1). (DE 6498 ¶¶ I-III, pp. 4-8; Related Case 51)

Mr. Osborn filed a "memorandum" in support of the motion for provisional substitution in reply to NPC's opposition to the motion for provisional substitution and motion to dismiss. ((DE 6574; Related Case 52) Mr. Osborn asserted in the "memorandum" that "Mr. Czernowski, as Yvonne Czernowski's successor, was not required under Florida law to open an estate or be appointed personal representative in order to move for substitution." (DE 6574, ¶ B, p. 4; Related Case 52)

The Magistrate Judge entered an order on April 24, 2013 for Mr. Osborn to show cause why he should not be sanctioned for misrepresenting to the court that actions were underway to open the late Ms. Czernowski's estate when they were not, and for failure to comply with the CMO with respect to opening the late Ms. Czernowski's estate. (DE 6598; Related Case 53) Mr. Osborn filed a "declaration" on May 15, 2013 in response to the Magistrate Judge's order. (DE 6682; Related

Case 56) NPC replied to the "declaration" on May 20, 2013.[2]  (DE 6692; Related Case 57)

This R&R addresses the following two matters pending before the court: 1) plaintiff's motion for provisional substitution; and 2) NPC's related motion to dismiss. Both matters are properly before the court.

## II. ANALYSIS

The procedures to be followed in substituting a personal representative for a deceased plaintiff in this multi-district litigation (MDL) are governed by the CMO and Rule 25(a). The relevant parts of the CMO at issue are quoted below:

> Within sixty (60) days of . . . the death of a plaintiff . . . plaintiff's counsel shall file a 'Suggestion of Death' . . . .
>
> . . .
>
> In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open and estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death . . . .
>
> . . .
>
> In the event that no personal representative has been appointed by the deadline for filing a Motion for Substitution, plaintiff's counsel shall describe in the Motion to Substitute the steps taken to obtain the appointment of a personal representative and state whether there are any competing applications. If the Court determines that the person sought to be substituted would be a proper party if appointed a personal representative of the deceased plaintiff and that the provisions of this Section of the Order and Fed. R. Civ. P. 25(a) have otherwise been complied with, the Court will provisionally grant the Motion for Substitution on the condition that the substituted plaintiff submit to the Court prior to remand of the plaintiff's claims a copy of the Order appointing him or her as the deceased plaintiff's personal

---

[2] In view of subsequent pleadings, the Magistrate Judge is no longer considering personal sanctions.

> representative.
>
> . . .
>
> Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative to be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Red. R. Civ. P. 25(a).

(DE 89, pp. 12-13; 103, p. 1)  The relevant part of Rule 25(a) is as follows:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Rule 25(a)(1), Fed. R. Civ. P.

### A. Requirements Under the CMO

#### 1. Obligation to Comply with the CMO

As an initial matter, Mr. Osborn argues that the requirements of the CMO are more stringent than Rule 25(a)(1), and that "[t]here is no valid reason for the Magistrate Judge to impose greater obligations on the plaintiffs regarding substitution than other plaintiffs subject only to Rule 25." (DE 6682 ¶ 8, p. 2; Related Case 56)  The inference to be drawn from this argument is that Mr. Osborn believes that the substitution provisions of the CMO are overly restrictive, unduly burdensome, contrary to Rule 25 and, for these reasons, he should not have to comply with the CMO.

Compliance with the CMO in this MDL is mandatory for the basic reason than administering cases in a MDL action is a far different breed of cat than administering cases on a normal docket.

*See In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1231-32 (9th Cir. 2006). Notwithstanding Mr. Osborn's preferences to the contrary, parties to a MDL have an "unflagging duty" to comply with clearly communicated CMOs. *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998). Failure to comply "strictly" with a CMO may result in "severe sanctions." *See 2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006). The district court possesses wide-ranging powers to sanction parties who balk at complying with the CMO. *See* Rule 16(f), Fed. R. Civ. P.; *see also Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45-46 (1st Cir. 2002). Dismissal is a proper sanction, particularly where failure to comply with the CMO was not outside the party's control. *In re Phenylpropanolamine (PPA) Products Liability*, 460 F.3d at 1235-36.

The CMO in this MDL has been in effect since July 28, 2006. (DE 89) Although the CMO has been amended over the course of the past nearly-eight (8) years for a variety of reasons, no objections were filed at the time the CMO was entered with respect to the provisions at issue here, or after, nor have any motions to eliminate the existing provisions ever been filed. Absent any objection by counsel when the opportunity to object was ripe, the CMO has been the law of the case for nearly 8 years. *See e.g., Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009)(standing for the proposition that, when the district court enters a CMO, and no challenge to the CMO is raised, the CMO becomes the law of the case and is binding on the parties). As the law of the case, the CMO is binding on the parties to this MDL, and compliance is mandatory . . . not optional. *Id*. Counsel who ignore the CMO do so at their own peril.

For the reasons explained above, Mr. Osborn's argument that failure to comply with the CMO does not constitute grounds for dismissal is without merit.

## 2. Suggestion of Death

As previously noted, *supra* at p. 3, the CMO required that Mr. Osborn file a suggestion of

death within sixty (60) days of Ms. Czernowski's death on January 4, 2012. He did not. NPC filed the suggestion of death on December 6, 2012, more than nine (9) months after the latest date that Mr. Osborn was required to file it. Mr. Osborn failed to comply with the CMO in not filing the suggestion of death within 60 days of Ms. Czernowski's death.

### 3. Opening the Late Ms. Czernowski's Estate

As previously noted, the CMO requires that, "[i]n the event . . . applicable state law requires the opening of an estate and the appointment of a personal representative . . . counsel shall initiate or cause to be initiated proceedings" to do so "within thirty (30) days of the plaintiff's death . . . ." As shown below, not only did Mr. Osborn fail to ensure that the late Ms. Czernowski's estate was opened within thirty (30) days of her death, her estate still has not been opened.

Mr. Czernowski testified as follows at his deposition in this case on February 11, 2013:

> Q. Now, we are here today on a claim that was brought by your wife, correct?
>
> A. Correct.
>
> . . .
>
> Q. **Did she have a will?**
>
> A. **She did have a will.**
>
> Q. **Okay. Was that probated in Court?**
>
> A. **No.**
>
> Q. But you have a copy of the will?
>
> A. Most likely. I did. I assume I still do.
>
> . . .
>
> A. Just everything was left to me.

(DE 6574 Ex. B., pp. 10-12; Related Case 52)(emphasis added) Mr. Czernowski also executed a

6

declaration on May 15, 2013 in which he made the following declarations under oath:

> . . . . I have been told that if I want to continue the lawsuit, it will cost ma a lot of money, more than $2,000. **I have not filed any documents with the court because of the cost involved**.
>
> . . . . The amount of money required to obtain authorization to continue the lawsuit will be a hardship for me and my family. **I likely will not be able to afford to proceed with the lawsuit**.

(DE 6682 Ex. A, ¶¶ 6-7, p. 2; Related Case 56)(emphasis added)

The following inescapable conclusion can be drawn from the foregoing: more than seventeen (17) months after Ms. Czernowski's death, six (6) months after the suggestion of death was filed, and three (3) months after the motion for provisional substitution was filed – Ms. Czernowski's estate still has not been submitted to probate as required by the CMO, and there is nothing in the record that suggests that it will be.

Mr. Osborn argues that Mr. Czernowski is a proper party for substitution, even though his late wife's estate has not been opened. (DE 6574 ¶ A. pp. 2-3; Related Case 52) Mr. Osborn attempts to support his position by arguing that: "Mr. Czernowski, as Yvonne Czernowski's successor, is not required under Florida law to open an estate or be appointed personal representative in order to move for substitution." (DE 6574 ¶ B, p. 4; Related Case 52)

Mr. Osborn misses the point with respect to the first part of his two-part argument above. The question is <u>not</u> whether Mr. Czernowski is – or is not – be a proper party to move for substitution; the question is whether Mr. Czernowski has satisfied the requirements under the CMO and Rule 25(a)(1) to be substituted for his late wife in this MDL action. The answer is that he has not nor, as shown below, will he be eligible to be substituted until he does.

In the second part of the two-part argument above, Mr. Osborn argues that Mr. Czernowski

is not required to open his late wife's estate under Florida law, the inference being that, because it is not required that Ms. Czernowski's be submitted to probate, there is no violation of the CMO. The Magistrate Judge responded to this part of Mr. Osborn's argument in a footnote in his April 24, 2013 order in which he wrote:

> . . . . The issue here is not who may file a motion to substitute; the issue is what is required under Florida law for Mr. Czernowski to be appointed as the personal representative of his late wife's estate, and to be issued the necessary letters of administration, so that he may proceed in this action. Under Florida law, that requires Ms. Czernowski's estate be submitted to probate. *See e.g.,* Fla.Prob.Rule Part II. Osborn Law's assertion that Mr. Czernowski's "application will not be opposed" is unavailing. "[I]f the decedent's estate has been opened, then the personal representative should be substituted in place of the decedent;" however, under the circumstances present here, "'*[i]f no estate has been opened, then another appropriate representative, such as a guardian ad litem, will need to be substituted.*'" *Schaeffler v. Deych*, 38 So.3d 796, 800 (Fla.App. 4 Dist., 2010)(quoting *Vera v. Adeland*, 881 So.2d 707, 7120 (Fla. 3d DCA 2004))(emphasis added).

(DE 6598, p. 4 n. 1; Related Case 53) Mr. Osborn's argument that Florida law does not require the late Ms. Czernowski's estate be submitted to probate is without merit.

In not ensuring that the late Ms. Czernowski's estate was submitted to probate, and a proper representative appointed, not only has Mr. Osborn failed to comply with the CMO, he has failed to comply with Florida law.

### 4. Provisional Substitution

The following passage from the CMO controls the provisional substitution of parties in this MDL:

> [T]he Court will provisionally grant the Motion for Substitution **on the condition** that the substituted plaintiff submit to the Court prior to remand of the plaintiff's claims a copy of the Order appointing him or her as the deceased plaintiff's personal representative.

(DE 89, p. 13)(emphasis added)  Implicit in the foregoing is that, if the provisionally substituted plaintiff is not subsequently appointed by the courts as the deceased's personal representative, then the action cannot be remanded.

The purpose of the instruction above is simple.  Federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.  *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)(citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  The forum state in this case is New York where the action was filed.  In tort actions, New York applies the so-called "interest analysis."  *Babcock v. Jackson*, 12 N.Y.2d 473, 481–82 (1963); *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 196–97 (1985); *see also Machleder v. Diaz*, 801 F.2d 46, 51 (2nd Cir.1986), *cert. denied*, 479 U.S. 1088 (1987). Under the "interest analysis," the law of the jurisdiction having the greatest interest in the litigation applies. *Schultz*, 65 N.Y.2d at 197.  In deciding which state has the prevailing interest, New York looks only to those facts or contacts that relate to the purpose of the particular laws in conflict. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id*.  The party's domicile in this case is Florida, as is the locus of the tort that gave rise to this action.

For the reasons explained above, whether this case is litigated in New York upon remand, or removed to Florida by NPC following remand, Florida substantive law will control the adjudication of this action.  If there is not a proper plaintiff as required under Florida law when this case is remanded, then the case cannot proceed regardless of where it is tried.

As discussed above, Mr. Czernowski has yet to submit his late wife's estate to probate, the upshot of which he has yet to commence those proceedings necessary to be appointed as his late wife's personal representative for purposes of this action.  It is equally clear from Mr. Czernowski's

declaration that he is unable and/or unwilling to initiate probate, the clear implication being that he will never be appointed as his late wife's personal representative by the Florida probate courts. In other words, Mr. Czernowski cannot now, nor will he be able to in the future, "submit to the Court prior to remand . . . a copy of the Order appointing him . . . as the deceased plaintiff's personal representative" as required under the CMO.

### B. Requirements Under Rule 25(a)(1)

Although Rule 25(a)(1) was amended in 1963 to give the courts greater flexibility to enlarge the 90-day substitution provision, the underlying purpose of Rule 25(a)(1) remains to protect the repose of decedents' estates by preventing interminable delays in the distribution of assets and the closing of estates. *See Cheramie v. Orgeron*, 434 F.2d 721, 725 (5th Cir. 1970)(citing *Bush v. Remington Rand, Inc.*, 213 F.2d 456 (2nd Cir. 1954), *cert. denied*, 348 U.S. 861 (1954)). The 1963 amendment did not change or otherwise alter the underlying purpose of the Rule, nor did it amend the requirement under the Rule that a proper party be substituted.

For reasons previously discussed, Mr. Czernowski does not satisfy the requirements to be substituted provisionally for his late wife and, because he is unwilling and/or unable take the actions necessary to be appointed as his late wife's personal representative as required under Florida law, he has removed himself as a candidate for substitution in the future. Granting the motion to provisionally substitute Mr. Czernowski under such circumstances would result in further delays in litigating this case on remand, if not outright dismissal, thereby running counter to the underlying purpose of Rule 25(a)(1).

### C. Conclusions from the Foregoing Analysis

Mr. Osborn's failure to comply with the CMO has resulted in this case having been plaintiff-less for the past seventeen (17) months, with no prospect that the defect will be corrected. Mr.

Osborn's motion to provisionally substitute Mr. Czernowski, although timely, fails to suggest for substitution a party that fulfills the requirements of either the CMO or Rule 25(a)(1). Consequently, this action is subject to dismissal with prejudice for failure to comply with the CMO and Rule 25(a)(1).

### D. Dismissal on Procedural Grounds

Dismissal on procedural grounds is disfavored in the Sixth Circuit, subject to the sound discretion of the court. *See Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). An abuse of discretion occurs when the district court's action leaves "[a] definite and firm conviction that the trial court committed a clear error of judgment." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Courts in the Sixth Circuit typically have considered the following four factors when considering whether dismissal is proper for failing to comply with procedural rules: 1) whether failure to comply was a result of willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed conduct; 3) whether the dismissed party was warned that failure to comply could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See e.g., Schafer v. City of Defiance Police Dept., et al.*, 529 F.3d 731, 737 (6th Cir. 2008); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). Although none of the factors above is outcome dispositive, a case "is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363. These four factors are addressed below.

### 1. Willfulness, Bad Faith, or Fault

Mr. Osborn had the professional responsibility to keep in touch with his client, the duty to know when she died and to file a suggestion of death, the responsibility to open her estate and obtain the appointment of a personal representative, and the obligation to substitute that appointed personal representative in this action. Had Mr. Osborn taken any of these steps within any of the time frames

11

set forth in the CMO, this case would not be sitting at the eleventh hour on the verge of remand with no plaintiff.³ Even now, should counsel complete the necessary procedures under Florida law to have Mr. Czernowski appointed as the personal representative of his late wife's estate, this case could move forward. Counsel has done far more work litigating the problem than would been required had he simply completed probate.

Mr. Osborn was a member of the Plaintiffs' Steering Committee (PSC) (DE 87) at the time the CMO was entered. As a member of the PSC, Mr. Osborn was aware of the requirements of both the CMO and Rule 25(a)(1), their intent and purpose, and the court ordered requirement that he comply with both. Given his special knowledge of the CMO and Rule 25(a)(1), <u>fault</u> clearly falls to Mr. Osborn for failure to comply with their clearly established requirements. The next question is whether Mr. Osborn's actions/inactions were willful.

Mr. Osborn continues to run afoul of the procedures in this MDL that pertain to substitution following the death of his clients. To the extent that his failure to keep abreast of what is going on in his clients' cases constitutes Mr. Osborn's standard operating procedure (SOP), then that SOP is "knowing." To the extent that Mr. Osborn's failure to keep abreast of the proceedings in his clients' cases is "knowing," and continues to affect this litigation adversely, then his conduct is deemed <u>willful</u>.

## 2. Prejudice

NPC has been prejudiced to the extent that it has been required to commit additional resources to litigate an issue resulting from Mr. Osborn's failure to know what is going on in this case. Prejudice to NPC is further compounded because, having committed resources to litigate this

---

³ Mr. Czernowski stated in his May 13, 2013 declaration that he "attended a deposition and gave testimony about Yvonne's case . . . ." (DE 6682 Ex. A, ¶ 4, p. 1; Related Case 56) There are no motions pending in this case, nor are there any apparent outstanding discovery requests. Absent any outstanding discovery issues, this case appears ripe for a suggestion of remand upon proper substitution.

matter over the course of the last 17 months, it turns out this late date that the action is subject to dismissal because Mr. Czernowski has not opened his late wife's estate, and does not intend to, something that could have been determined much earlier had Mr. Osborn complied with the CMO.

### 3. Prior Warning

Both the CMO and Rule 25(a)(1) provide clear warning that failure to substitute entitles the defendant to move for dismissal with prejudice. Mr. Osborn was fully aware of the possible consequences of his failure to comply.

### 4. Whether Other less Drastic Sanctions Were Considered

The Magistrate Judge recognizes that dismissal with prejudice is the ultimate sanction for Mr. Osborn's failure to comply with the intent/purpose of Rule 25(a)(1) and the CMO. However, after considering other less drastic sanctions, the Magistrate Judge is of the view that dismissal with prejudice is the appropriate sanction. Moreover, Mr. Osborn's failure in this case has burdened the court, strained scarce court resources, delayed disposition of this case, and prejudiced the defendant.

### 5. Summary of the Analysis

The four factors addressed above each favor NPC. Therefore, NPC's motion to dismiss on procedural grounds should be granted.

## III. RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge recommends that plaintiff's motion for provisional substitution (DE 6431; Related Case 47) be **DENIED**, that the motion to dismiss filed by the NPC (DE 6498; Related Case 51) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot.[4]

---

[4] Should counsel – even at this late date – complete probate as required by the CMO, the District Judge would be justified in rejecting this R&R and considering a suggestion of remand.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 27th day of June, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge